Filed 7/31/18; Certified for Publication 8/16/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMALIA WEBSTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CLAREMONT YOGA et al.,<br><br>    Defendants and Respondents. | B279272<br><br>(Los Angeles County<br>Super. Ct. No. BC587100) |

    APPEAL from a judgment of the Superior Court of Los Angeles County, Patricia Nieto, Judge. Affirmed.

    Law Offices of Greg W. Garrotto and Greg W. Garrotto for Plaintiff and Appellant.

    Bonne, Bridges, Mueller, O'Keefe & Nichols, Mitzie L. Dobson and Michael K. Liu for Defendants and Respondents.

_____

Plaintiff Amalia Webster appeals from a grant of summary judgment in favor of defendants and respondents Claremont Yoga and Kurt Bumiller. Plaintiff alleged that Bumiller had injured her while adjusting her posture during a yoga class in which he was the instructor. Defendants moved for summary judgment and filed expert declarations stating that defendants had not breached the standard of care and that Bumiller had not caused plaintiff's injuries. Plaintiff put forth no experts of her own, instead opposing the motion with her own deposition testimony and medical records. The trial court granted the motion, finding that plaintiff had failed to put forth evidence conflicting with that of defendants' experts. We agree with the trial court's conclusion and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2014, plaintiff attended a yoga class at Claremont Yoga taught by Bumiller. According to plaintiff, Bumiller injured her several times during the class. He placed a belt around her waist and right leg to help her position her right leg over her left, which plaintiff claimed was painful. He pushed down on her lower back while she was in a "cow position," which plaintiff claimed hurt her knee. Plaintiff contended that while she was laying on her back, Bumiller twisted her neck to both sides three times, which she asserted caused her pain. At no point did plaintiff inform Bumiller that she was in pain or ask him to stop what he was doing.

Plaintiff filed a complaint against defendants alleging a single cause of action for negligence. Defendants moved for summary judgment, arguing that defendants complied with the relevant standard of care for yoga facilities and instructors and

that Bumiller's actions did not cause or contribute to plaintiff's alleged injuries.[1]

In support of their motion, defendants filed declarations from Jeffrey Deckey, M.D., and Jonathan Simons, Psy.D. Deckey, an orthopedic surgeon, declared that plaintiff's injuries were due to "chronic degenerative disc disease and arthritic changes," not "a traumatic injury or acute injury" occurring during the yoga class. He opined that plaintiff's medical records and level of activity following the yoga class were "not consistent with a traumatic or forceful injury at the hands of her yoga instructor."

Simons, a psychotherapist and yoga instructor, opined that Bumiller's actions as alleged by plaintiff "were within the standard of care for a yoga instructor teaching a Restorative yoga class." He declared that it was "quite common for yoga teachers to touch students during class and assist them when they are improperly doing yoga positions. Further, yoga instructors often adjust students and help them stretch during certain poses." Simons stated that "[t]he majority of yoga students desire the touching and assistance with poses described . . . by [plaintiff]. This is a regular part of the yoga practice and an instructor would not know the student was unhappy or felt any pain unless the student so advised the instructor."

Plaintiff opposed the motion but did not file any witness declarations. She objected to the Simons declaration as lacking foundation and the Deckey declaration as "inherently

_____

[1] Defendants also argued that plaintiff had signed a contract limiting defendants' liability. The trial court rejected the contract as a basis for granting summary judgment and it is not at issue in this appeal.

unbelievable." (Boldface, underlining, and capitalization omitted.) She disputed the conclusions in those declarations, citing her own deposition testimony and medical records as well as the deposition of one of Claremont Yoga's owners, Nicole Riel.

The trial court overruled plaintiff's objections to the Simons and Deckey declarations and granted the motion for summary judgment. It found that plaintiff had failed to produce evidence disputing Simons's conclusion that Bumiller's conduct met the applicable standard of care. It further found that defendants had established that they had not caused plaintiff's injuries, and plaintiff had failed to provide any competing expert testimony.

Plaintiff appealed from the judgment.

## STANDARD OF REVIEW

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) "[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850.) A defendant can meet this burden by "present[ing] evidence which, if uncontradicted, would constitute a preponderance of evidence that an essential element of the plaintiff's case cannot be established." (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 879 (*Kids' Universe*).) "Once the [defendant] has met that burden, the burden shifts to the [plaintiff] to show that a triable issue of one or more material facts exists as to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(1) & (2); see *Aguilar*,

4

*supra*, at p. 850.)  A triable issue of material fact exists when "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850.)

"We review an order granting summary judgment de novo, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.' " (*Sakai v. Massco Investments, LLC* (2018) 20 Cal.App.5th 1178, 1183 (*Sakai*).)  " 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' " (*Ibid.*)

## DISCUSSION

### A. Plaintiff Failed To Show A Triable Issue Of Material Fact That Defendants Breached The Applicable Standard Of Care.

Plaintiff argues that her deposition testimony regarding Bumiller's actions as well as Nicole Riel's testimony were sufficient to show a triable issue of material fact as to defendants' breach of their duty of care.  We disagree.

To prove negligence, a plaintiff must show breach of a legal duty and " 'that the breach was a proximate or legal cause of injuries suffered by the plaintiff.' " (*Sakai*, *supra*, 20 Cal.App.5th at p. 1183.)  "Breach is the failure to meet the standard of care." (*Coyle v. Historic Mission Inn Corporation* (2018) 24 Cal.App.5th 627, 643.)

5

"In negligence cases arising from the rendering of professional services, as a general rule the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts. Only their testimony can prove it, unless the lay person's common knowledge includes the conduct required by the particular circumstances." (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239 (*Unigard*); see *Sanchez v. Brooke* (2012) 204 Cal.App.4th 126, 127 ["Generally, expert testimony is required to establish the standard of care that applies to a professional."].) " ' "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." ' " (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 607.)

Here, defendant's expert Simons explained in his declaration the normal practices of yoga instructors in touching students to adjust their position and help them stretch, and opined that Bumiller's conduct was consistent with those practices and met the standard of care in the industry. The trial court overruled plaintiff's objection to Simons's declaration and plaintiff does not challenge that ruling on appeal. Therefore Simons's opinion, "if uncontradicted, would constitute a preponderance of evidence that an essential element of the plaintiff's case," namely breach of the standard of care, "cannot be established." (*Kids' Universe*, *supra*, 95 Cal.App.4th at p. 879.)

It was incumbent on plaintiff to contradict this evidence with competing expert testimony. She did not do so. There is no suggestion in the record, nor does plaintiff argue on appeal, that

6

she herself is an expert on the standard of care in the yoga instruction industry.  And Riel, even if she could be considered an expert, did not opine on the standard of care or whether Bumiller met it; the portion of her testimony cited by plaintiff simply stated that Bumiller "has a very gentle touch.  I have never seen him touch in a way that would suggest otherwise."  We reject plaintiff's suggestion that her testimony that Bumiller was aggressive, contrasted with Riel's testimony that Bumiller normally was gentle, was sufficient to show a deviation from the standard of care absent expert testimony as to what the appropriate standard of care was.

Plaintiff argues that an expert's testimony is not determinative, even when uncontradicted, because a jury may reject it.  (See, e.g., *Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509.)  But even if a jury rejected Simons's opinion, plaintiff would still have the burden affirmatively to establish the applicable standard of care and a breach thereof, which she cannot do without an expert.  In the absence of an expert, she could not show a triable issue of material fact, and defendants were entitled to summary judgment.

Plaintiff argues that yoga teachers are not subject to the rules for professional negligence, and there is no standard of care for all practitioners of yoga, just "many methods and . . . means by which one may be a practitioner of yoga."  Surely, however, "the lay person's common knowledge" would not include "the conduct required by the particular circumstances" of a yoga instructor in Bumiller's position, and an expert's opinion on the question would be of benefit.  (*Unigard*, *supra*, 38 Cal.App.4th at p. 1239.)  Although many cases discussing standard of care involve medical malpractice, the rule requiring expert testimony

to establish the standard of care has been applied in other industries as well. (See, e.g., *ibid.* [legal malpractice]; *Stonegate Homeowners Assn. v. Staben* (2006) 144 Cal.App.4th 740, 749 [construction defects].) As for plaintiff's contention that the yoga instruction industry has no uniform standard of care, she cites no evidence to support her contention; indeed, an expert would be needed on this point as well.

The trial court correctly held that plaintiff had failed to show a triable issue of material fact as to whether defendants breached the standard of care, and properly granted summary judgment on that basis.

### B. Plaintiff Failed To Show A Triable Issue Of Material Fact That Defendants Caused Her Alleged Injuries.

Plaintiff contends that her medical records were sufficient to dispute defendants' expert's opinion[2] that her injuries were not caused by defendants' negligence. Plaintiff also appears to suggest, without stating so specifically, that causation in this case could be shown without expert testimony. We disagree with both contentions.

As a general matter, juries may decide issues of causation without hearing expert testimony. (*Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, 403 (*Jones*).) But "[w]here the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation." (*Garbell v. Conejo Hardwoods, Inc.* (2011) 193 Cal.App.4th 1563, 1569 [expert testimony required to

---

[2] Plaintiff does not challenge on appeal the trial court's overruling of her objections to the opinion.

8

determine cause of house fire]; see *Jones*, *supra*, at pp. 402-403 [expert testimony required to determine whether pharmaceutical caused cancer].)

Here the causation issue was complex. In moving for summary judgment, defendants contended, per the Deckey declaration, that plaintiff's injuries "were due to chronic degenerative disc disease and arthritic changes" as opposed to "an acute or traumatic injury." It would be beyond the ability of a lay juror to determine, in the absence of expert testimony, whether plaintiff's injuries were caused by Bumiller's actions, a chronic condition, or some other mechanism. Plaintiff cites no authority to the contrary. The trial court did not err in concluding that proof of causation in this case required expert testimony.

Plaintiff's medical records did not satisfy this requirement. Setting aside the question whether medical records standing alone can substitute for expert testimony, the records here did not indicate that any medical professional had concluded that plaintiff's injuries were caused by Bumiller. Plaintiff identifies several records she claims establish causation, but at most they reflect plaintiff had neck pain that she herself believed was caused by Bumiller. We summarize these medical records below.

An October 15, 2014 record indicates that plaintiff reported neck pain "caused by yoga instructor per patient," with plaintiff explaining that the instructor pulled on her neck and pushed on her shoulders. Although the doctor apparently diagnosed plaintiff with "neck muscle strain" (capitalization omitted), the record does not indicate the doctor concluded that the strain was caused by plaintiff's yoga instructor, only that plaintiff believed the yoga instructor's actions were the cause. The record states

9

"trap muscle strain 2/2 yoga," but this is not a finding of causation.  To the extent plaintiff believes otherwise, she would need to establish it through testimony by her treating physician or an expert familiar with medical shorthand.  A lay juror could not reach that conclusion in the absence of expert assistance.

An October 31, 2014 record again notes neck strain "per [patient] due to yoga," with no indication that the doctor agreed with plaintiff's assessment.

A November 24, 2014 record indicates a follow-up exam for the neck strain, with no reference to its cause.

A January 20, 2015 record refers to neck strain, with plaintiff herself reporting that the pain had been a "[p]ersistent issue since straining it in yoga 2-3 months ago."

A January 26, 2015 record from a physical therapy appointment quotes plaintiff's report of yoga injury from the previous record, and also indicates that plaintiff told the therapist she was injured when her "[yoga] instructor twisted her."  This information is repeated in a subsequent record from the physical therapist dated February 13, 2015.

A February 3, 2015 record indicates plaintiff spoke by telephone with a registered nurse and later a doctor and reported neck pain and swelling.

A February 18, 2015 record indicates under "History" (underlining omitted) that plaintiff reported pain triggered by her "new yoga instructor" pulling on her neck.  Later, the report states, "Chronic neck pain after neck was manipulated by a new yoga instructor."  This would appear to be an indication of what plaintiff was reporting as opposed to a conclusion by the doctor as to causation; again, to the extent plaintiff contends otherwise,

10

she would have to establish it through testimony from the doctor or a medical expert.

Absent additional explanatory testimony from plaintiff's treating physicians or a medical expert, the medical records identified by plaintiff establish nothing more than that she had neck pain and believed her yoga instructor had caused it. The records do not contain any sort of competent expert opinion regarding causation; they only document plaintiff's non-expert opinion, with no indication whether the treating professionals agreed with that opinion. The records therefore were insufficient to show a triable issue of material fact as to causation. The trial court properly granted summary judgment on that basis as well.

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.

BENDIX, J.

We concur:

JOHNSON, Acting P. J.

CURREY, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/16/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| AMALIA WEBSTER, | B279272 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC587100) |
| v. | |
| CLAREMONT YOGA et al., | CERTIFICATION AND ORDER FOR PUBLICATION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

The opinion in the above-entitled matter filed July 31, 2018, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


    BENDIX, J.        JOHNSON, Acting P. J.       CURREY, J.*

_____

    *  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.